**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

SADIQUE MUSTAFA JAFFER
and MOHAMEDTAKI
MUSTAFA JAFFER,

      **Plaintiffs,**

v.                      **Case No: 6:25-cv-894-PGB-RMN**

FARHAN RAFIQUE, RAZA
KHAN and LOADSTOP, INC.,

      **Defendants.**

_____/

## <u>ORDER</u>

This cause is before the Court on Defendants Farhan Rafique, Raza Khan, and Loadstop, Inc.'s (collectively, the "**Defendants**") Renewed Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 20 (the "**Motion**")). Plaintiffs Sadique Mustafa Jaffer and Mohamedtaki Mustafa Jaffer (collectively, the "**Plaintiffs**") have filed a response in opposition (Doc. 22 (the "**Response**")). Upon consideration, the Motion is due to be denied.

## I.    BACKGROUND[1]

Plaintiffs bring this diversity action for recission of certain investment contracts. (Doc. 14, ¶¶ 14, 29). The dispute flows from Defendants' sale of allegedly unregistered securities to Plaintiffs (the "**Transaction**"). (*Id.* ¶ 11).

The events precipitating this action began on March 7, 2022, when Plaintiff Mohamedtaki Mustafa Jaffer ("**Plaintiff MJ**") met with Defendant Raza Khan ("**Defendant RK**"), the Founder and Chief Executive Officer of Defendant Loadstop, Inc. ("**Loadstop, Inc.**"), at an office in Altomonte Springs, Florida. (*Id.* ¶¶ 10, 13). At this meeting, Defendant RK offered to sell to Plaintiff MJ "the right to certain shares of Loadstop, Inc." (*Id.* ¶ 11). Defendant RK "represented to [Plaintiff MJ] . . . that the initial investment plus a profit would be repaid within two (2) years." (*Id.*). Soon thereafter, Defendant RK spoke with Plaintiff Sadique Jaffer ("**Plaintiff SJ**") via telephone and extended an offer identical to the one made in-person to Plaintiff MJ. (*Id.* ¶ 12). Defendant RK also represented to Plaintiff SJ that his "initial investment plus a profit would be repaid within two (2) years." (*Id.*).

On March 22, 2022, Defendant RK and Defendant Farhan Rafique ("**Defendant FR**"), the Chief Operating Officer of Loadstop Inc., memorialized their offers to Plaintiffs in writing. (*Id.* ¶ 14). The instrument took the form of a

---

[1]    This account of the record is derived from Plaintiff's Amended Complaint (Doc. 14 (the "**Amended Complaint**")). The Court accepts plaintiffs' factual allegations as true when considering motions to dismiss. *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

Simple Agreement for Future Equity ("**SAFE**").[2] (*Id.*). None of the Defendants are registered as or have held themselves out to be broker-dealers, nor are the Defendants associated with a broker-dealer. (*Id.* ¶¶ 26–28). Plaintiffs agreed to the terms and purchased SAFEs for one million dollars ($1,000,000) each. (*Id.* ¶¶ 16–17). After receiving two million dollars ($2,000,000) from Plaintiffs, Defendants "nearly doubled their annual officer's salary . . . using the investment to personally benefit themselves." (*Id.* ¶ 20).

Now, more than two years later, "no payment has been made" on "Plaintiffs' principal investments or any returns." (*Id.* ¶ 22). Accordingly, Plaintiffs seek recission of these investment contracts. (*Id.* ¶ 29). As such, Plaintiffs assert four causes of action, each for the wrongful sale of an unregistered security under Florida law. (*Id.* ¶¶ 31–65).

## II.   LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Thus, to survive a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

---

[2]   A SAFE is designed to facilitate investment "before [a] company is ready to undertake a formal round of financing . . . thus before it is worthwhile to create a class of preferred stock suitable for such purposes." RICHARD A. BOOTH, FINANCING THE CORPORATION § 3:10 (2024). SAFEs permit investors to make early investments in exchange for "company stock at a later date upon specified triggering events." *Id.* Importantly, a "SAFE has no maturity date. A SAFE is designed to expire and terminate only when a safe holder has received stock or cash . . . ." *Id.* Ultimately, "the central idea of a SAFE is *simply* to assure very early stage investors of equal treatment (more or less) with later stage investors." *Id.*

to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must view the complaint in the light most favorable to the plaintiff and must resolve any doubts as to the sufficiency of the complaint in the plaintiff's favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, though a complaint need not contain detailed factual allegations, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," is not enough to satisfy the plausibility standard. *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 679; *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In sum, the court must: reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678–79.

## III.  DISCUSSION

Defendants move to dismiss the Amended Complaint, arguing that 1) the sale of SAFEs, offered in this manner, do not violate Florida law, and 2) that the

Plaintiffs lack standing and the case is not ripe for adjudication.[3] (Doc. 20, pp. 10–15). The Court will address each of these arguments in turn.

### A.   Florida Securities Law

Plaintiffs' cause of action arises from Sections 517.07 and 517.12(1) of the Florida Statutes, which prohibit 1) the offer or sale of an unregistered, non-exempt

---

[3]   Defendants also assert that the Amended Complaint contains several procedural deficiencies. (Doc. 20, pp. 5–10, 15).

Defendants first contend that the Amended Complaint is a "shotgun pleading" in violation of Federal Rule of Civil Procedure 8. (*Id.* at p. 5). Principally, Defendants argue that the Amended Complaint asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (*Id.*) (quoting *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015)). However, the Amended Complaint does not offend *Weiland*, as each Count specifies which Plaintiff is bringing what claim against each Defendant. (*See* Doc. 14, ¶¶ 30–65). Thus, Defendants cannot plausibly claim that they have no notice of the claims levied against them. (Doc. 20, p. 5).

Next, Defendants assert that the Amended Complaint violates Federal Rule of Civil Procedure 8 by relying on legal conclusions rather than factual allegations. (*Id.* at pp. 7–10). However, the Amended Complaint's factual allegations are sufficient to state a claim under Section 517.07 of the Florida Statutes. *See* FLA. STAT. § 517.07 (2022). What a plaintiff must plead in a Section 517.07 action is quite simple: (1) the contracts sold by Defendants were securities; (2) the securities were not registered with the State of Florida; and (3) Defendants sold the unregistered securities. *Hodges v. Harrison*, 372 F. Supp. 3d 1342, 1350 (S.D. Fla. 2019); *see also* FLA. STAT. § 517.07(1)–(2) (2022). The Amended Complaint plausibly alleges that 1) a SAFE is a security, 2) Defendants did not register their SAFEs as securities, and 3) Defendants sold these SAFEs to Plaintiffs. (*See* Doc. 14, ¶¶ 14, 11, 16–17).

Finally, Defendants argue that the parol evidence rule bars this Court's consideration, at the motion to dismiss stage, of the allegation that Defendants promised that the SAFEs would be repaid "with profit" within two years. (Doc. 20, p. 15). This argument is better addressed at a later stage in litigation, such as through a motion for summary judgment or motion *in limine*. This is because an allegation not "offered for the purpose of varying the terms of a written agreement" could still be utilized to demonstrate "fraud, accident, or mistake." *Farrey's Wholesale Hardware Co. v. Coltin Elec. Servs., LLC*, 263 So. 3d 168, 177 (Fla. 2d DCA 2018). The parol evidence rule is an admissibility determination for trial, not a bar at the pleading stage. *Pavolini v. Williams*, 915 So. 2d 251, 254 (Fla. 5th DCA 2005) (refusing to strike affirmative defenses reliant on parol evidence in an answer to a complaint). Without a more fulsome record, the Court cannot summarily ignore a plausible allegation within the four-corners of the Amended Complaint at the motion to dismiss stage.

security within Florida and 2) the offer or sale of a security by an unregistered dealer. *See* FLA. STAT. §§ 517.07, 517.12(1); (*see generally* Doc. 14). Defendants primarily argue that the Transaction is exempt under Section 517.061 of the Florida Statutes. (Doc. 20, p. 12). For the purposes of the Motion, Defendants do not appear to contest that a SAFE is a security.

A security is exempted from Section 517.07's registration requirements if it meets *each* the following five conditions: 1) "There are no more than 35 purchasers . . . of the securities of the issuer . . ."; 2) the securities are not sold "by means of any form of general solicitation or general advertising in this state"; 3) "each purchaser . . . [is] given reasonable access to [] full and fair disclosure of all material information"; 4) no sellers acting as "dealers" of securities, without being registered as a dealer,  "is paid a commission or compensation for the sale of the issuer's securities . . ."; and 5) if sales are made to five or more persons in this state, each sale is voidable by the purchaser within a specified period. FLA. STAT. § 517.061(11)(a) (2022).[4] Defendants argue that this exemption applies to the Transaction, and as a result, Plaintiffs have no Section 517.07 cause of action. (Doc. 20, pp. 10–12).

However, the allegations of the Amended Complaint, taken in the light most favorable to Plaintiffs, defeat Defendants' assertion of the Section 517.061(11)(a)

---

[4]  The Court applies the version of the Florida Statutes operative at the time of the Transaction. *See Hassen v. State Farm Mut. Auto. Ins. Co.*, 674 So. 2d 106, 108 (Fla. 1996) (confirming that Florida courts "will not divine an intent that a new law be applied to disturb existing contractual rights or duties when there is no express indication that such is the legislature's intent.").

exemption. Plaintiffs identify that Defendant RK and Defendant FR, neither of whom are registered dealers, "nearly doubled their annual officer's salary . . . using the investment to personally benefit themselves" after the Transaction settled. (Doc. 14, ¶ 20). The direct use of Plaintiffs' investment as a means of increasing their salary seemingly constitutes a "commission or compensation" paid to Defendant RK and Defendant FR for the sale of Loadstop Inc.'s securities. *See* FLA. STAT. § 517.061(11)(a)(4) (2022). While Defendants argue that this allegation is implausible without "any documentation to substantiate" the details of the payment, including "the alleged payor, payee, date, method, or purpose of the supposed payment", such allegations are not necessary at the pleadings stage. (Doc. 20, p. 12). Defendants provide no authority to the contrary. Accordingly, this is an issue best explored at summary judgment, and not at the motion to dismiss stage.

## B.    Standing and Ripeness

Defendants also argue that Plaintiffs lack standing and that the case is not yet ripe for adjudication. (Doc. 20, pp. 13–15). This is because, as Defendants claim, "Plaintiffs are seeking repayment under the SAFE Agreement [and] no triggering event has occurred." (Doc. 20, p. 14); *see also supra* note 2 (providing an explanation of the "triggering event" in a SAFE). Moreover, Defendants assert that Plaintiffs have "not alleged any facts giving rise to a 'concrete and particularized' injury in fact[.]" (Doc. 20, p. 14 (citations omitted)).

7

However, Plaintiffs clearly have articulated facts sufficient to demonstrate an injury in fact. Plaintiffs allege that they purchased a product unlawfully sold to them, and now they want their money back. (*See* Doc. 14, ¶ 29). The Supreme Court has identified monetary harms as the prototypical injury for Article III standing: "certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms. If a defendant has caused . . . monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021).

In this case, Plaintiffs suffered a monetary injury because they paid money and entered into a transaction that state law says should not have occurred. (*See* Doc. 14, ¶ 29); *see also* FLA. STAT. § 517.07. The transfer of value in exchange for an unlawfully sold product or service readily qualifies as an injury in fact for Article III purposes.

Next, Defendants argue that this suit is not ripe for adjudication because the "triggering event" for the SAFEs have not yet occurred. (Doc. 20, p. 14). The ripeness inquiry is designed to prevent federal courts from issuing advisory opinions. *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005) ("Strict application of the ripeness doctrine prevents federal courts from rendering impermissible advisory opinions . . ."). The inquiry requires courts to determine "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* (citations omitted).

In this case, the issues are ripe for review. Plaintiffs' asserted injury is the purchase of the SAFEs themselves, not the triggering event. (*See* Doc. 14, ¶¶ 18, 29).  This is reinforced by Plaintiffs' chosen cause of action and remedy. *See* FLA. STAT. § 517.07 (making unlawful the ***sale or offer to sell*** unregistered securities); *TTSI Irrevocable Tr. v. ReliaStar Life Ins. Co.*, 60 So. 3d 1148, 1150 (Fla. 5th DCA 2011) ("Rescission is an equitable remedy where the primary obligation is to undo the original transaction and restore the former status of the parties."). Put another way, if Plaintiffs had pursued a standard breach of contract theory, the injury would not accrue *until a breach* had occurred. However, this statutory cause of action, prohibiting the sale of an unregistered security, creates a distinct injury at the *moment of sale*. *See* FLA. STAT. § 517.07. Because the sale – and thus the injury – has already occurred, there is a live case and controversy. (Doc. 14, ¶¶ 18, 29). Accordingly, judicial review would not offend Article III's prohibition on advisory opinions. *Nat'l Advert. Co.*, 402 F.3d at 1339.

Moreover, the prudential factors weigh in favor of adjudicating this case. The problem with withholding judicial review until a "triggering event" is that the trigger may *never* occur. *See supra* note 2 (specifying that a "SAFE has no maturity date."). SAFEs are a novel financing instrument at the cutting-edge of the venture capital industry. If SAFEs could evade federal judicial review before a triggering event, and a triggering event may never occur, some Plaintiffs with potentially meritorious claims under Sections 517.07 and 517.12(1) of the Florida Statutes might never get their day in federal court. Accordingly, the Court does not find it

9

appropriate to withhold review in this circumstance and Plaintiffs' claims survive the motion to dismiss stage.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (Doc. 20) is **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on February 5, 2026

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties